19 MAG 11215

ORIGINAL

Approved: _____
CECILIA E. VOGEL
Assistant United States Attorney

Before:   HONORABLE ROBERT W. LEHRBURGER
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - X
                              :    SEALED COMPLAINT
UNITED STATES OF AMERICA      :
                              :    Violation of 21 U.S.C.
        - v. -                :    § 846
                              :
KAREN LIZARRAGA,              :    COUNTY OF OFFENSE:
                              :    NEW YORK
          Defendant.          :
                              :
- - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

ROMONA SY, being duly sworn, deposes and says that she is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE

1. In or about May 2019, in the Southern District of New York and elsewhere, KAREN LIZARRAGA, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that KAREN LIZARRAGA, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substances that KAREN LIZARRAGA, the defendant, conspired to distribute and possess with intent to distribute were (a) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A); and (b) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Special Agent with the DEA. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## The Missouri Stop

5. Based on my participation in this investigation, including my conversations with other law enforcement agents and review of law enforcement records and reports, I have learned the following, in substance and in part:

   a. In or about April 2019, KAREN LIZARRAGA, the defendant, and another individual who was traveling with LIZARRAGA ("Individual-1") were stopped by law enforcement in the New York metropolitan area in connection with suspected narcotics trafficking. LIZARRAGA provided identification and her cellphone number ("Phone Number-1") to law enforcement, and Individual-1 provided identification and a cellphone number ("Phone Number-2") to law enforcement.

b. On or about May 17, 2019, law enforcement officers at a bus stop in Missouri observed a woman ("CC-1")[1] exit a passenger bus arriving from California. The officers approached CC-1 and spoke with her. CC-1 consented to a search of her luggage. Within the luggage, the officers found a black bag (the "Black Bag") secured with a lock. CC-1 provided the officers with a key to the lock. Inside the Black Bag, the officers found four brick-like packages wrapped in clear plastic (the "Packages"). Law enforcement field tested and weighed the contents of the Packages. Two of the Packages tested positive for heroin, and two of the Packages tested positive for fentanyl. Each of the Packages weighed approximately one kilogram.

c. After being advised of and waiving her *Miranda* rights, CC-1 informed law enforcement, in substance and in part, that she was traveling by bus from California to New York City and that she was supposed to transport the Black Bag from California to New York City. CC-1 also stated, in substance and in part, that she was delivering the Black Bag at the direction of a woman located in California and known to her as "Karen," who was later identified as described below as KAREN LIZARRAGA, the defendant. CC-1 provided the following information about LIZARRAGA, in substance and in part:

i. LIZARRAGA had given the Black Bag to CC-1 in California, and LIZARRAGA told CC-1 that the Black Bag contained approximately $30,000 in cash. In addition, LIZARRAGA had given CC-1 a flip cellphone to use for the trip and approximately $200 in cash for food and expenses.

ii. LIZARRAGA had instructed CC-1 to take a bus from California to New York City, at which point LIZARRAGA would direct CC-1 to a restaurant, where someone would meet CC-1 to pick up the Black Bag and to give CC-1 cash for delivering the Black Bag. LIZARRAGA had also purchased the bus ticket for CC-1.

---

[1] CC-1 was arrested and charged with federal narcotics offenses in connection with the events described herein. CC-1 subsequently cooperated with law enforcement in the controlled delivery described herein and has provided information to law enforcement in the hope of achieving leniency at sentencing. CC-1's information has been reliable and corroborated by independent evidence.

iii. In exchange for delivering the Black Bag, LIZARRAGA was supposed to pay CC-1 approximately $1,500.

iv. During the course of the trip, CC-1 remained in regular contact with LIZARRAGA using her cellphone. LIZARRAGA instructed CC-1 to safeguard the Black Bag at all times and warned CC-1 that there would be people with animals at various bus stops and that CC-1 should avoid the animals. Based on my training and experience, I believe that LIZARRAGA was warning CC-1 to avoid law enforcement and law enforcement canines that detect narcotics, which are frequently waiting at bus stops on cross-country routes in order to detect narcotics.

v. CC-1 provided law enforcement with the address for LIZARRAGA's residence in California ("Address-1") and consented to a search of her cellphones, which contained phone numbers for and text messages with LIZARRAGA. One of the phone numbers saved in CC-1's cellphone as "Karen" was Phone Number-2, *i.e.*, the same phone number Individual-1 had provided to law enforcement when she was stopped by law enforcement with LIZARRAGA in or about April 2019. Text messages saved in CC-1's cellphone between CC-1 and LIZARRAGA, including text messages from LIZARRAGA using Phone Number-2, corroborated CC-1's statements that CC-1 was transporting the Black Bag at the direction of LIZARRAGA and that LIZARRAGA had given the Black Bag to CC-1.

vi. Law enforcement agents showed CC-1 a photograph of LIZARRAGA obtained from a law enforcement database, and CC-1 identified LIZARRAGA as the "Karen" who had directed her to deliver the Black Bag to New York City.

d. CC-1 agreed to cooperate with law enforcement and to conduct a controlled delivery of the Black Bag in New York City. Law enforcement made arrangements for CC-1 to travel from Missouri to New York City on or about May 17, 2019. For purposes of the controlled delivery, law enforcement put sham narcotics inside the Black Bag designed to look like the Packages, which law enforcement seized.

e. Over the course of the controlled delivery operation, on or about May 17 and 18, 2019, at the direction of law enforcement, CC-1 made recorded calls with LIZARRAGA and continued to communicate with LIZARRAGA via text message. Among other things, CC-1 conveyed to LIZARRAGA, in substance and in part, that CC-1 was continuing to travel by bus to New York as instructed by LIZARRAGA.

6.   Based on queries in law enforcement databases, I have learned that the address listed on the driver's license of KAREN LIZARRAGA, the defendant, is Address-1 (*i.e.*, the residence of LIZARRAGA provided by CC-1). In addition, I have learned that one of the phone numbers CC-1 identified in her phone as belonging to "Karen," which was saved in CC-1's contacts as "Karen Clininc" is Phone Number-1, *i.e.* the same phone number LIZARRAGA had provided to law enforcement as her phone number when she was stopped by law enforcement in or about April 2019, and is subscribed in LIZARRAGA's name at Address-1.

### The Manhattan Controlled Delivery

7.   Based on my participation in this investigation, including my conversations with other law enforcement agents and review of law enforcement records and reports, information provided by CC-1, text messages and phone calls between CC-1 and KAREN LIZARRAGA, the defendant, that CC-1 consensually recorded, and physical surveillance, I have learned the following, in substance and in part:

a.   On or about May 18, 2019, CC-1 received instructions by phone from LIZARRAGA, in substance and in part, that CC-1 should wait at a specific restaurant in Manhattan, New York ("Restaurant-1") because the individuals to whom she was supposed to deliver the Black Bag would meet her at Restaurant-1. LIZARRAGA also instructed CC-1, in substance and in part, that CC-1 would receive approximately $4,000 in cash for delivering the Black Bag.

b.   Later that day, on or about May 18, 2019, CC-1 waited at Restaurant-1 to deliver the Black Bag. While CC-1 was waiting at Restaurant-1, LIZARRAGA provided CC-1 via text message from Phone Number-1 with a phone number to contact the individuals who were coming to meet CC-1 to take the Black Bag and pay the approximately $4,000. While continuing to wait at Restaurant-1, CC-1 spoke by phone with a male ("CC-2") using the phone number provided by LIZARRAGA. On the call, CC-2 told CC-1, in sum and substance, that he was approximately fifteen minutes away.

c.   Shortly thereafter on or about May 18, 2019, CC-2 and another male ("CC-3") arrived at Restaurant-1 by car, and they sat down with CC-1 to eat a meal. During the course of the meal, CC-2 handed CC-1 approximately $4,000 in cash, in exchange for the Black Bag. CC-1, CC-2, and CC-3 subsequently

5

left Restaurant-1, with CC-2 carrying the Black Bag, and at that time, CC-2 and CC-3 were arrested.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of KAREN LIZARRAGA, the defendant, and that she be imprisoned or bailed, as the case may be.

_____
Romona Sy
Special Agent
Drug Enforcement Administration

Sworn to before me this
27th day of November, 2019

_____
THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York